NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JACK P. MCGEE,**
*Petitioner,*

**v.**

**DEPARTMENT OF AGRICULTURE,**
*Respondent.*

---

2012-3071

---

On appeal from the Merit Systems Protection Board in Case No. AT1221100202-C-1.

---

Decided: July 20, 2012

---

JACK P. MCGEE, of Smyrna, Georgia, pro se.

LAUREN S. MOORE, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director.

---

Before NEWMAN, CLEVENGER, and BRYSON, *Circuit Judges.*

PER CURIAM.

## DECISION

Jack P. McGee appeals a decision of the Merit Systems Protection Board denying his petition for enforcement of a settlement agreement with the United States Forest Service. We affirm.

## BACKGROUND

Mr. McGee worked as a Qualified Review Appraiser for the Forest Service, an agency within the Department of Agriculture. He was initially paid at the GS-12 salary level but was later promoted to the GS-13 level.

In November 2009, Mr. McGee filed an individual right of action ("IRA") appeal pursuant to the Whistleblower Protection Act, asserting that the Forest Service had retaliated against him for engaging in protected whistleblowing activity. At a mediation session held on August 11, 2010, the Forest Service and Mr. McGee entered into an agreement settling that action. The settlement agreement provided, in pertinent part, as follows:

The Agency agrees to:

1. Reassign [Mr. McGee] to the Forest Legacy Program Realty Specialist, GS-1170, with the specific staff responsibility in the area of State & Private Forestry's Forest Legacy Program.

\* \* \*

d.  Mr. Murphy [Mr. McGee's first-line supervisor] will prepare a position description and the position will be classified in accordance with established classification policy and procedure.  Mr. Murphy will work with the classification staff to ensure that the position description properly reflects the duties and responsibilities of this position.   The position will be sent for expedited classification.

*   *   *

e.  The Agency does not represent that the position will be classified at a specific grade.  Appellant acknowledges that the position may be classified at the GS-12 or GS-13 grade level.

*   *   *

g.  The Agency agrees to make efforts to reassign [Mr. McGee] to this position no later than October 1, 2010.  [Mr. McGee] acknowledges that the timing of this reassignment is contingent on OPM's [the Office of Personnel Management's] classification of this position, which is not within the Agency's control.

Based on the settlement agreement, the Board dismissed Mr. McGee's IRA appeal as settled.

It is clear from the record that Mr. McGee hoped that the position contemplated by the settlement agreement would be graded at the GS-13 salary level, but the agency ultimately graded the position at the GS-12 level.  When that occurred, Mr. McGee filed a petition to enforce the settlement agreement, alleging that the Forest Service

had breached the agreement. In particular, Mr. McGee alleged that (1) the Forest Service had breached paragraphs 1(d) and 1(g) of the agreement because Mr. Murphy had been prohibited from working with the classification specialist to develop a position description for Mr. McGee's new position, and (2) the position description had not been sent to OPM for classification. Mr. McGee requested that the Forest Service be ordered to comply with the terms of the settlement agreement.

In its response, the Forest Service asserted that Mr. Murphy had worked with the agency classification staff in formulating a position description for Mr. McGee and that the settlement agreement did not require that the position description be sent to OPM for classification.

The administrative judge who was assigned to the proceeding conducted a pre-hearing conference at which the administrative judge designated the issues to be decided in the enforcement proceeding as limited to the following:

> [1] whether the agency materially breached the settlement agreement because Murphy was prevented from working with the classification staff to ensure that [Mr. McGee's] position description accurately reflected his duties and responsibilities and

> [2] whether the agency breached the settlement by not sending the position description to OPM for classification.

Mr. McGee did not object to that designation of the issues to be decided.

At a hearing in March 2011, the parties addressed whether the agency had prohibited Mr. Murphy from working with the classification staff and whether Mr. McGee considered it a material breach that the position description was not classified by OPM but instead by agency personnel. At the conclusion of the hearing, Mr. McGee stipulated that the issue of whether his position description was required to be classified by OPM was not material to his decision to enter into the settlement agreement.

The administrative judge subsequently issued an initial decision denying the petition for enforcement. Based on Mr. McGee's stipulation, the administrative judge found that the Forest Service did not materially breach the settlement agreement when it did not send the position description to OPM for classification. However, the administrative judge determined that the requirement that Mr. Murphy work with the classification staff, to ensure that the position description for Mr. McGee's new position properly reflected the duties and responsibilities of the position, was a material term of the settlement agreement. The administrative judge further found that Mr. Murphy did not work with the classification staff as required by the agreement and that his failure to do so constituted a breach of the agreement by the Forest Service. Nevertheless, the administrative judge determined that the breach was not material "because the agency ultimately complied with the intent of the agreement that Mr. Murphy have input into the position description so that the position description properly reflected the duties and responsibilities of the position." The administrative judge explained that "[i]t would be meaningless to order the agency to direct Mr. Murphy to work with the classification staff in a reclassification of the position description because Mr. Murphy testified the

position description accurately reflects the duties and responsibilities of the position." Mr. McGee then filed a petition for review by the full Board.

The full Board denied Mr. McGee's petition for review in an order explaining its views. With respect to the question of Mr. Murphy's involvement in the classification process, the Board found that Mr. Murphy was "sufficiently involved in the submission of the final position description for the classification process so as 'to ensure that the position description properly reflects the duties and responsibilities of this position,' as required under the contested paragraph of the settlement agreement."

Mr. McGee then petitioned for review by this court.

DISCUSSION

1. Mr. McGee first asserts that the Board "dismiss[ed] the importance of" the provision requiring Mr. Murphy to prepare the position description and that the Board "ignor[ed] the whole issue of fraud and bad faith dealings by the agency." We disagree. The record shows that the Board thoroughly reviewed Mr. Murphy's involvement in preparing the position description and his communications with the classification staff regarding the position's classification. In his initial decision, the administrative judge discussed the provision regarding Mr. Murphy and determined that it had been breached. However, the administrative judge went on to determine that the breach was not material because the agency complied with the intent of the agreement that Mr. Murphy have input into the position description so that it would properly reflect the duties the position. It is therefore clear that the Board did not dismiss the importance of the provision concerning Mr. Murphy.

Mr. McGee also alleges that the agency committed fraud by failing to provide Mr. Murphy or his supervisor, Mr. Dondero, with a copy of the settlement agreement. However, the record shows that Mr. McGee and David Torok, an employee in the agency's human resources office, "both spoke to [Mr. Murphy] about his role in creating the new position description." Accordingly, it is clear that Mr. Murphy was aware of the settlement agreement, even if he never received a physical copy of it. In any event, Mr. McGee has not explained why the agency's alleged failure to provide Mr. Murphy with a copy of the settlement agreement constitutes fraud.

2. Mr. McGee next takes issue with what he describes as the Board's characterization of his actions in preparing his own position description as "deliberate actions to create a position description that would grade out as a GS-13." The Board, however, did not ascribe any impropriety to the actions of Mr. McGee or Mr. Murphy in attempting to obtain a GS-13 position for Mr. McGee. To the contrary, the Board acknowledged that both Mr. McGee and Mr. Murphy intended for the position to be graded at the GS-13 level and that the formulation of a new position description for Mr. McGee had begun prior to the parties' settlement agreement. Mr. McGee's allegations on this point do not provide a basis for relief.

3. Mr. McGee argues that the Board incorrectly stated that Mr. Dondero showed the final version of the position description to Mr. Murphy before it was sent to the classification specialist, Ms. Valdez. The record reflects that Mr. Murphy and Mr. Dondero repeatedly discussed the position description and that Mr. Murphy agreed with the changes that were made to it. Even if the Board mistakenly believed that Mr. Dondero showed the final version of the position description to Mr. Murphy

before sending it to Ms. Valdez, Mr. McGee has not made any showing that the Board's error is significant or that he was prejudiced by Mr. Murphy's failure to review the final version of the position description, since he was already aware of its contents.

4. Focusing on the removal of Quality Assurance Inspection ("QAI") duties from the position description, Mr. McGee argues that "[i]t is clear from the testimony that the source of this alleged policy decision, which had an adverse impact on the Petitioner's position classification" was "the very same parties . . . who had been responsible for the reprisal actions against the Petitioner as cited in his original IRA appeal." Mr. McGee argues that "the Board's reliance on the agency's version of [why the QAI duties were removed from the position description] is not supported by credible evidence." In fact, Mr. Murphy testified that he agreed with the decision to remove the QAI duties from the position description because a policy decision was made at the national level to retain that function in a different program and not to transfer it to the Legacy Program, where Mr. Murphy and Mr. McGee worked. Mr. McGee has failed to show that the decision was the result of any improper conduct that would support his petition for enforcement of the settlement agreement.

5. Mr. McGee takes issue with the Board's discussion of the phrase "mastery of real estate knowledge," which, at one point, appeared in the position description. It is unclear what significance the Board attached to that phrase, but in any event Mr. Murphy acknowledged that the final position description used by the classification specialist accurately reflected the duties and responsibilities of the new position. Mr. McGee complains that the "'new' position . . . bore little resemblance to the original

position submitted by Mr. Murphy." It is clear from the settlement agreement, however, that Mr. McGee was not guaranteed a specific position at a specific grade, so we discern no error in the Board's discussion of that issue.

6. Mr. McGee next argues that the Board erred in summarily dismissing his claims concerning the agency's classification process and his claim that the agency breached its duty of good faith in carrying out the settlement agreement. Mr. McGee, however, has not presented any evidence that the agency acted improperly during the classification process, nor has he shown how a proper classification process would have led to a different result. The short answer to Mr. McGee's argument is that the settlement agreement did not guarantee him a position at the GS-13 level, and the evidence shows that his position was properly graded as a GS-12 position.

7. Mr. McGee claims that the agency did not show that it complied with the settlement agreement or that there was good cause for its noncompliance. We disagree. The Board considered the issue of compliance with the agreement and determined that the Forest Service did not materially breach the settlement agreement by failing to send the position description to OPM for classification. That determination was largely based on Mr. McGee's stipulation in his closing argument that he did not consider sending the position description to OPM to be a material term of the settlement agreement. With respect to Mr. Murphy's involvement in developing the position description, the Board determined that although the Forest Service breached the settlement agreement, the breach was not material "because the agency ultimately complied with the intent of the agreement that Mr. Murphy have input into the position description so that the position description properly reflected the duties and

responsibilities of the position." The record shows that the position description that was ultimately approved reflects the duties and responsibilities of the position.

8. Mr. McGee argues that the Board summarily rejected his claim that he was not appointed to a position at the level specified in the settlement agreement. It is clear, however, that the settlement agreement did not designate a specific position (or salary level) that Mr. McGee would receive. Accordingly, there is no force to that claim.

9. The bulk of Mr. McGee's informal brief concerns his claim that the Forest Service fraudulently induced him to sign the settlement agreement. Mr. McGee contends that the agency offered him a GS-13 position during the mediation hearing, that he accepted that offer, and that he was told that the agency would have to seek a GS-13 classification from OPM before it could be effective. Mr. McGee alleges that the Forest Service officials knew that the position could be classified as a GS-13 at the agency level but nevertheless insisted that a provision be included in the agreement requiring the position to go to OPM for classification. According to Mr. McGee, it was on that basis that the Forest Service refused to specify the GS-13 classification in the settlement agreement. Ultimately, the classification issue was not sent to OPM but was instead resolved by the agency. Within the agency, the decision to remove the QAI duties and "mastery of real estate knowledge" elements from the position description resulted in the position becoming a GS-12 position instead of a GS-13 position.

The first problem with Mr. McGee's fraudulent inducement claim is that he failed to raise it before the Board and has raised it for the first time in this court,

which is impermissible. *Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed. Cir. 1998); *Meglio v. Merit Sys. Prot. Bd.*, 758 F.2d 1576, 1577 (Fed. Cir. 1984). Mr. McGee alleges that he was not aware of the agency's fraud and bad faith until the enforcement hearing, which occurred after his agreement to limit the issues before the Board. But that explanation is unconvincing. Given that Mr. McGee claims that he was offered a GS-13 position, that he accepted it, and that the agency gave him a GS-12 position instead, he had a fully sufficient basis to argue that the agency had improperly induced him to enter into the settlement agreement by promising to give him a GS-13 position and then breached it by offering him a GS-12 position instead. Rather than raising that argument at the time (even though he was represented by counsel), Mr. McGee agreed to limit the issues regarding breach of the settlement agreement to Mr. Murphy's insufficient involvement in crafting the position description, and the agency's failure to have the position description approved by OPM. Moreover, Mr. McGee acknowledges that he was aware of all the facts underlying asserted fraud in the inducement claim by the time he sought review of the administrative judge's initial decision, yet he did not raise that argument before the Board in his petition for review.

Even aside from the problem of waiver, Mr. McGee's fraudulent inducement claim fails on the merits. The settlement agreement makes clear that Mr. McGee's new position could end up being graded at either the GS-12 or the GS-13 level. And at the hearing, Mr. McGee was asked, "[b]ut you knew in the settlement agreement that it could be a 12, it could be a 13, just whatever classification determined?" He responded, "Yes. And they definitely stated it would not be a 14." Although Mr. McGee claims that he was offered—and that he accepted—a GS-13 position, the settlement agreement simply does not

support that claim, and his counsel presumably understood that the written agreement would control the parties' obligations, not any statements that may have been made in the process leading to the formulation of the agreement, or any expectations that Mr. McGee may have had about how the classification process would play out.

Mr. McGee was offered a job that was assigned a GS-12 salary level based on a position description that Mr. Murphy agreed was accurate. Mr. McGee's assertion that he believed he had accepted an offer that included a position graded at GS-13 is contrary to the terms of the settlement agreement, which made no such representation. Mr. McGee has thus failed to show that he was fraudulently induced to sign the settlement agreement.

For the foregoing reasons, we affirm the decision of the Board.

No Costs.

**AFFIRMED**